**CAMPBELL, Plaintiff, v. HOGUE et, Defendants.**

Common Pleas Court, Meigs County.

No. 12580. Decided August 12, 1958.

L. Dewitt Agler, Columbus, for plaintiff.
Halliday & Sheets, Gallipolis, for defendant, Mabel Hogue.

## OPINION

By BACON, J.

Action by Thelma Campbell against Mabel Hogue, et al., to quiet title to the following described 3½ acre parcel.

Being in Section 7, Town 6, Range 14 of the Ohio Company's Purchase, in Rutland Township, Meigs County, Ohio. Beginning at the N. E. corner of said Section 7, thence South to the public road, thence Northwesterly along said public road to the North line of said Section 7, thence East to the place of beginning, containing 3½ acres, more or less, and being a part of the property conveyed by Guy F. Larkin and Frances Larkin, his wife, to Earl Hogue, by deed dated June 12, 1930, and recorded in Book 133 at Page 373 of the Deed Records of Meigs County, Ohio.

Said 3½ acres is also part of 96.69 acres, described viz:

Being in Section 7, Town 6, Range 14, beginning at the N. E. corner of Section 7: Thence West along the North section line, 153 rods to the N. E. corner of Elmont Stevens; thence South 142 rods; thence East 72 rods and 20 links; thence North 39½ degrees East 25 rods and 13 links; thence North 21½ degrees East 14 rods 17 links; thence North 32½ degrees East 18 rods; thence North 55½ degrees East 22 rods 16 links; thence East 30 rods 16 links to the East line of Section 7; thence North on the East section line to the place of beginning, containing 100 acres, except 3-31/100 acres sold to the K & M Railway. Being the farm lying on the West side of the State Road originally owned by Abel Larkins and willed or deeded to Stillman Larkins.

Plaintiff's chain of title to said 96.69 acres runs back to a mortgage deed executed by Guy F. and Frances Larkin to the Citizens National Bank of Middleport, received for record May 2, 1927, recorded Mortgage Book 46 page 224, Meigs County records.

Defendants' immediate predecessor in title, Earl Hogue, received a deed from said mortgagors, Guy F. and Frances Larkin, executed December 24, 1930, recorded in Deed Book 133 page 373, for a farm which included a separate description for the 3½ acre tract as first above described. Although this 3½ acre parcel was included in the metes and bounds description in the prior mortgage Earl Hogue's grantors had executed to the Citizens National Bank, no partial release was obtained from the bank for this parcel.

In proceedings in this court completed November 10, 1934, following petition filed August 8, 1934, the Citizens National Bank foreclosed its prior mortgage, bid in the property of 96.69 acres as above described and received a sheriff's deed received for record Nov. 27, 1934, recorded Deed Book 141, page 67. The bank also obtained a deficiency judgment in the sum of $638.87 against Guy F. and Frances Larkin. Earl Hogue was not made a party to the foreclosure action.

Defendants attempt to make much of a paper found among the original court papers in the foreclosure action purporting to be a motion to amend the confirmation of the above sale. However, the Clerk's docket discloses no motion was ever filed and the paper is devoid of file stamp. Therefore, it is a nullity.

Plaintiff produced twelve reliable, disinterested witnesses that her father or employes under him had taken possession and farmed the 3½ acre parcel annually almost without exception since he acquired the 96.69 acres from the Citizens National Bank.

George Prall testified he personally recalled that A. T. Barton farmed the 3½ acre tract the first year after the foreclosure, that he was one of the appraisers in the action and the 3½ acres was included in his appraisal.

Harrison Bentley recalled that A. T. Barton's employee, Cliff Williams, better known as "Buckskin," and Burl Barton worked on the 3½ acre parcel in the 1930's, that he never recalled Earl Hogue working that parcel.

Isaac Taylor said he remembers "Buckskin" working the 3½ acres with A. T. Barton's team, that Earl Hogue never to his knowledge worked that parcel.

Sherman Buskirk testified that he saw "Buckskin" work the 3½ acres with A. T. Barton's horses. Said Earl Hogue worked both sides of the road one year. (The defendant, Mabel Hogue, later testified her husband, Earl Hogue, had A. T. Barton's farm rented one year.)

Byron Price said he lived on the A. T. Barton farm in 1945, when "Buckskin" worked the 3½ acre parcel and soy beans harvested therefrom were taken to the Barton barn.

William Lawrence Wilson testified he did farm work for A. T. Barton in 1947 and 1948, farming the 3½ acres as well as the land West or South of the road, taking from the 3½ acres corn one year that he later put the 3½ acres in oats. The crops harvested therefrom were stored in Barton's barn. He further said he recalled seeing Worley Russell working the 3½ acre parcel, that he saw Earl Hogue work above the 3½ acres but never on that parcel.

Arza Bryant testified he saw "Buckskin" and Burl Barton work the 3½ acres over a period of years, saw them culitvate it, haul oats and other crops across the road to Barton's barn. That he remembered seeing Barton's wagon on the 3½ acres about 1950, that he never saw Earl Hogue on the 3½ acres but Hogue did have a field right above. That he made his observations over a period of years as the driver of a delivery truck for the Rutland Department Store where he had many years of employment.

Wayne Price said he saw "Buckskin" work the 3½ acre piece, that in 1954 A. T. Barton sent him, Price, on the 3½ acre piece to see if any grass had come up.

Worley Russell said he prepared a seed bed for A. T. Barton on the 3½ acre parcel about 3 or 4 years ago, that Barton paid him $20 for the discing.

Sherman Roberts testified he worked on the 3½ acre piece for Barton, sowed it in soy beans in 1954, sowed it in timothy and clover in 1955 after Worley Russell disked it, that he never saw Earl Hogue work the 3½ acres although Hogue worked the land immediately above (North).

Clifford Rhodes said that he was intimately acquainted with A. T. Barton since 1925, that he recalled when Barton bought the Larkin farm from the bank, that he was a frequent visitor and personally recalls Barton farming the 3½ acre piece from time of possession from the bank until 1939.

Francis Lightfoot testified that two years ago he worked on the Barton farm one season. Worked both sides of the road. Put Barton's share from the 3½ acre tract in Barton's barn and took his share to his place, that he cut hay for Barton on the 3½ acre parcel.

Defendant, Mabel Hogue, produced Freda Kennedy and William Smith, who placed Earl Hogue on the 3½ acres in 1943 and 1944. Mabel Hogue's brother-in-law, Dwight Kennedy, said the only farming he knew of he helped take hay from the 3½ acres one year, that he didn't remember whether "Buckskin" ever worked the 3½ acres. Robert Barrett said he leased the Hogue farm in 1940, left it in 1942. He didn't work the 3½ acres at that time, but said he saw Hogue haul soy beans the year he got killed.

Defendant's witness, Floyd Dunfee, said he was familiar with the 3½ acre tract, had seen Hogue cut hay there around 1936, and thinks around 1944 Hogue had corn on it. Another witness, Charles Carson, said he was familiar with the 3½ acre parcel, saw Earl Hogue farm it in 1954. On cross-examination Carson said he tried to buy the 3½ acre piece, but Earl Hogue told him he couldn't sell it because there was a little question about it. Hogue told him A. T. Barton was laying claim to it. Carson recalled somebody cutting hay on it some in the last year or so.

Thelma Campbell's testimony was consistent with that of her witnesses, including her relation of obtaining soy beans at Gallipolis for planting on the 3½ acres by Earl Hogue in 1954, the year Hogue rented the entire Barton farm.

Mabel Hogue confirmed the 1954 rental in her testimony. It appears Mabel Hogue was in the domestic service of the Bartons until her marriage in 1935 when she went with Earl Hogue to the Hogue farm. In the late fall of 1936 the Hogues left the county, going to Roseville and not returning to their farm until in the fall of 1942. She also said she had personally worked on the 3½ acre piece, said she had it in corn in 1943 and 1944 and since that time it laid idle for years. That it wasn't farmed in 1947 or 1948, nor 1950. She denied that Mr. Lightfoot cut hay from it.

Plaintiff by her witnesses made out the overwhelming case for possession of the 3½ acres, and at this point it should be determined if said 3½ acres was included in the description of the lands in the prior mortgage to the Citizens National Bank by Earl Hogue's grantors. There is no question that the tract falls within the metes and bounds description of the mortgage. Did the following words contained in the mortgage deed to the bank, the sheriff's deed, and substantially the same in all conveyances in plaintiff's chain of title, immediately following the metes and bounds description in each instance, viz: "Being the farm lying on the West side of the State Road originally owned by Abel Larkins and willed or deeded to Stillman Larkins," except the 3½ acre parcel from the 96.69 acres described by metes and bounds?

It was not established in the evidence the particular lands "originally owned by Abel Larkins and willed or deeded to Stillman Larkins," so that the "farm lying on the West side of the State Road" remains vague and undefined. It is not certain that even had such evidence been offered that it would have been helpful in view of the authorities to the effect that a metes and bounds description fully describing certain premises is not modified in any respect by the addition thereto of words which refer to the source of the grantor's title. **Burks v. Louisville Title Ins. Company, 95 Oh Ap 509, 54 O. O. 128, 121 N. E. 2d 94,** quoting the rule stated in 16 American Juris., Deeds, Sec. 276, ". . . where the description is full and complete in itself and a reference to another deed is added, the quantity of land conveyed is not restricted by the reference." Considering that a "farm" consists of divers things gathered into one, as a messuage, land, meadow, pasture, wood, common, not necessarily contiguous, if used as one whole, **Black v. Hill, 32 Oh St 313,** Ohio

**48**

Words & Phrases, p. 220, the vague words "Being the farm lying on the West side of the State Road," cannot affect or restrict the lands described by metes and bounds in the prior mortgage.

Frances Larkin testified for defendants that she and her husband once owned the lands subsequently acquired by A. T. Barton and Earl Hogue, both deceased. That they mortgaged the lands on the South side of the road to the Citizens National Bank and the lands on the North side of the road to George Carter. However, the question is not what Guy F. and Frances Larkin intended to convey to the bank in their mortgage deed, but what they did convey insofar as the Meigs County records are concerned. Under the facts it is clear that Earl Hogue acquired only the equity of redemption in the 3½ acre parcel.

And the judicial sale under the foreclosure of the prior mortgage given by Hogue's grantors to the Citizens National Bank was not void. The sale was valid even though Hogue who had acquired the equity of redemption in the 3½ acre parcel was not made a party. His right to redeem his 3½ acres remained. **Childs v. Childs, 10 Oh St 339.**

But the record discloses that he never attempted to exercise that right during his lifetime, date of his death being November 21, 1954. Nor did his successors in title attempt to exercise such right of redemption. On the contrary, according to the testimony of twelve reliable, disinterested witnesses, Earl Hogue suffered A. T. Barton, deceased, and the plaintiff, Thelma Barton Campbell, to occupy and use said 3½ acres under color of title. There is no evidence in the record that such possession as was testified to was ever interfered with by Hogue, even though by defendants' witness, Charles Carson, it was evident Hogue was well aware of Barton's claim of ownership.

Under the evidence in this case this court has no alternative than to award to plaintiff a decree according to the prayer of her petition. An entry so providing may be prepared, saving exceptions to defendant.